UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sheridan T. Brown

v. Civil No. 1:25-cv-353-SE-AJ
Opinion No. 2026 DNH 141

Town of Grantham,
New Hampshire, et al.

O R D E R

Sheridan T. Brown, an attorney appearing pro se, brings this action under 42 U.S.C. § 1983 and New Hampshire law against defendants the Town of Grantham, New Hampshire (Town) and two members of the Town's Board of Selectmen, Peter Garland, and Jeremy Walla. This case stems from the defendants' act of barring Brown from accessing the Grantham Transfer Station after he had multiple altercations with Transfer Station employees. Brown asserts a litany of federal constitutional claims, including violations of his right to free speech, procedural due process, and equal protection. He also alleges that the defendants exceeded their authority when they enforced a town ordinance to exclude him and that Garland and Walla breached their oaths of office. He seeks punitive damages against Garland and Walla, an order removing Garland and Walla from office, various forms of declaratory and injunctive relief, and damages.

The defendants move to dismiss on several grounds, including that Brown failed to exhaust his administrative remedies and that they are entitled to municipal immunity from Brown's claims for personal injury or bodily harm. Doc. no. 7. Brown objects. Doc. no. 9. The defendants' reply includes a number of arguments not briefed in their motion to dismiss, including that the Transfer Station is not a traditional public forum, Brown does not have a

constitutionally protected property interest in access to the Transfer Station, and Garland and Walla are entitled to qualified immunity. See doc. no. 10. But "arguments 'raised for the first time in reply briefing are considered waived.'" Woods v. Westbridge Inc., No. 1:24-CV-027-SE-TSM, 2026 WL 893246, at *7 n.4 (D.N.H. Mar. 31, 2026) (quoting Planet Fitness Int'l Franchise v. JEG-United, LLC, 633 F. Supp. 3d 484, 501 n.16 (D.N.H. 2022)). "Further, Local Rule 7.1(e)(1) restricts reply memoranda to 'rebuttal of factual and legal arguments raised in the objection or opposition memorandum.'" Id. (quoting Faiella v. Green Tree Servicing LLC, No. 16-CV-088-JD, 2016 WL 3546232, at *3 n.2 (D.N.H. June 23, 2016)). As such, the court considers at this stage only the arguments properly raised in the defendants' motion to dismiss.

Accepting as true Brown's factual allegations, as the court must at this stage, his claims largely, though not entirely, survive the defendants' motion to dismiss for the reasons explained below. Whether Brown's claims can survive a supplemental motion to dismiss under Federal Rule of Civil Procedure 12(c) or a properly supported motion for summary judgment is an open question.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d

77, 81 (1st Cir. 2013). To test a complaint's sufficiency, the court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations omitted) (quoting Iqbal, 556 U.S. at 678). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Id. (quotation omitted).[1]

Background[2]

The Town of Grantham operates a taxpayer-funded Transfer Station where residents may dispose of various forms of waste. The Transfer Station also serves as a forum where residents have conversations with one another, meet candidates for local office, and share feedback with government officials and employees.

Use of the Transfer Station must accord with the "Transfer Station Rules" (Rules), the relevant version of which was adopted by the Town's Board of Selectmen on January 8, 2025.

---

[1] While the court would typically construe Brown's pleadings liberally in light of his pro se status, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), it will not do so because he is an attorney admitted to practice in this court and others within New Hampshire and Massachusetts. See doc. no. 6, ¶ 10; see also Solomon v. Blinken, No. 2:23-CV-00219-NT, 2024 WL 127019, at *3 (D. Me. Jan. 11, 2024) (collecting cases).

[2] The following facts are drawn from Brown's amended complaint and the documents attached thereto. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (recognizing that, in deciding a motion to dismiss, courts may consider documents attached to the complaint or incorporated by reference into the complaint).

The Town has a three-person Board. Garland and Walla served as two of three members during the contested events and have each taken the oath of office required by New Hampshire law. The Rules are "an ordinance made by the Selectmen of the Town for the proper operation of the Transfer Station." Doc. no. 6 at 8, 42. The Rules list various prohibited activities and other regulations. They provide that "[f]ailure to adhere to these rules, regulations, and direction of . . . Grantham [e]mployees may result in fines." Id. at 45. The first offense leads to a written warning; the second offense is subject to a $100 fine; the third offense is subject to a $200 fine; and the fourth offense can result in the revocation of privileges for a period determined by the Board or other agents of the town. When a person's access to the Transfer Station is suspended, the Rules warn that the person may be liable for criminal trespass upon entering the Station. Further, the "Board of Selectmen reserves the right to bypass these steps if the violation is egregious." Id. at 46. Brown alleges that the Rules "set forth no mechanism by which a party may be heard before being penalized" or "appeal to have his . . . access restored." Id. at 9.

On August 2 and 3, 2025, Brown followed the Rules when he used the Transfer Station. Nonetheless, Transfer Station employees treated Brown "rudely and provocatively," and "provided directives . . . that were inconsistent with the . . . Rules." Id. at 6 at 2, 9. Brown verbally protested the directives but ultimately complied with them. Specifically, on August 2, 2023, a Transfer Station employee insisted that Brown check in before disposing of several bags of leaves—which Brown alleges was not required by the Rules or past practice—and the employee and Brown exchanged words. Brown claims that a recently posted sign directing visitors to see an attendant before heading "out back" did not clearly communicate to him that he needed to check in with a Transfer Station employee under the circumstances.

Then, on August 3, 2023, Brown went back to the Transfer Station. After he checked in before disposing of some brush, a Transfer Station employee made a derisive comment. Brown later returned at 3:48 p.m., before the 4:00 p.m. closing time, and a Transfer Station employee directed him to signage requesting that visitors "plan to arrive 15-minutes early." Id. at 12. After a contentious exchange, the employee allowed Brown to enter.[3]

On August 4, 2025, Brown wrote to the Board to complain about his experience. His letter shared ongoing concerns about Transfer Station operations. Brown also filed a Right-to-Know request seeking to inspect public documents pertaining to Transfer Station operations.

On August 6, 2025, in response to the events of August 2 and 3, the Board of Selectmen issued a No Trespass Order (NTO) against Brown barring him from the Transfer Station for an indefinite period. Garland and Walla, but not the third member of the Board, signed the NTO. Brown alleges that Garland and Walla did not issue the NTO during a formal meeting of the Board. Brown further alleges that the NTO "grossly misunderstands and misrepresents" what happened on August 2 and 3. Id. at 10. The notice accuses him of "rude and combative behavior" and asserts that he "treated the staff with disrespect and made threats." Id. at 62. The notice also states that the "revocation will remain in effect until you meet in person with the Grantham Board of Selectmen to explain your behavior during a regularly scheduled Board meeting." Id. at 62-63. It adds that the "meetings occur twice monthly, and your appearance will take place during a public session." Id. at 63. Brown has refused to appear before the Board based on his objections that "there are no set procedures for appeal," that Garland and Walla have conflicts of interest, and that appearing will cause him reputational harm. Id. at 3. Brown's complaint

---

[3] On August 13, 2025, the Board changed the Transfer Station's closing time to 3:45 p.m.

includes several examples of instances during which the defendants have taken similar actions against other residents and required them to appear before the Board to explain their conduct and request recission of an NTO.

Without access to the Transfer Station, Brown has incurred expenses associated with arranging to dispose of his trash another way. Brown suffers from Ehlers-Danlos Syndrome of the hypermobility type, a medical condition that "results in sprains, strains, and subluxations when not sufficiently managed with relaxation and regularly schedule exercise." Id. at 21. He alleges that the defendants' actions, which led him to file this lawsuit, have caused him stress and interfered with his relaxation and exercise routine, exacerbating his chronic pain.

## Discussion

Brown asserts six counts in his amended complaint. He brings four under 42 U.S.C. § 1983: Violation of the First and Fourteenth Amendments (Counts I and IV); Violation of his procedural due process rights under the Fourteenth Amendment (Count II); and Violation of his right to equal protection under the Fourteenth Amendment (Count III). He also asserts counts alleging that the defendants have no legal authority to enforce the NTO (Count V) and that Garland and Walla have breached their oaths of office (Count VI).[4] He further seeks punitive damages against Garland and Walla in a separate section that resembles but is not labeled as a count.

The defendants argue that all of Brown's claims must be dismissed because he failed to exhaust his administrative remedies. They also contend that Counts V and VI must be dismissed

[4] Brown mistakenly labels the claim against Garland and Walla as "Count V." Doc no. 6 at 36.

because the defendants did not exceed their legal authority and there is no private right of action against members of a Board of Selectmen for breaching their oaths of office. The court addresses in turn each of the arguments raised in the defendants' motion to dismiss.[5]

I. Administrative Exhaustion

The defendants argue that the court should dismiss Brown's complaint because he has failed to exhaust the administrative remedy available to him. Specifically, they allege that Brown can appeal the revocation of his access to the Transfer Station by appearing before the Board, as stated in the NTO. Further, the defendants argue, no exception to administrative exhaustion applies.

The court assumes without deciding that the opportunity to appear before the Board qualifies as an administrative remedy that could require exhaustion. As Brown notes, "[t]he Supreme Court has made clear that exhaustion of state administrative remedies is not a prerequisite to filing an action under 42 U.S.C. § 1983." Chmielinski v. Massachusetts, 513 F.3d 309, 314 (1st Cir. 2008) (citing Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)). Thus, although Brown's allegations show that he did not avail himself of the opportunity to appear before the Board and seek reinstatement of his access to the Transfer Station, this fact does not prevent him from filing § 1983 claims seeking to vindicate his constitutional rights. Likewise, Brown was not required to exhaust his administrative remedies before asserting his claims under state law (that the Board does not have legal authority to enforce the NTO and that Garland and

[5] In their motion to dismiss, the defendants also wave at arguments distinguishing "privileges" from "rights" and asking the court to dismiss the individual plaintiffs to the extent that they are sued in their official capacities. The defendants did not develop these arguments or cite any supporting law or precedent. Consequently, the court does not address them.

Walla have breached their oath of office) because the issues raised in the claims are questions of law and not questions of the exercise of administrative discretion.[6] See Bedford Residents Grp. v. Town of Bedford, Plan. Bd., 130 N.H. 632, 638–39 (1988) (citing Bourgeois v. Town of Bedford, 120 N.H. 145, 149 (1980) (citing cases)); McCarthy v. Madigan, 503 U.S. 140, 148 (1992) ("[E]xhaustion has not been required where the challenge is to the adequacy of the agency procedure itself, such that the question of the adequacy of the administrative remedy is for all practical purposes identical with the merits of the plaintiff's lawsuit." (alterations and quotations omitted)).

## II. The Defendants' Authority To Enforce The Ordinance

Count V of the amended complaint asserts that the defendants acted without legal authority to enforce the NTO. The amended complaint does not identify a statutory or common law cause of action with respect to this claim, but the defendants do not argue that the court should dismiss it on that basis. The court presumes for the purposes of this order that Brown asserts Count V under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), which he references in his jurisdictional statement.

Brown alleges, in part, that when Garland and Walla barred him from the Transfer Station, "they enforced a violation through a process other than the state's criminal code or an administrative enforcement system allowed by [New Hampshire Revised Statutes Annotated (RSA)] § 31:39-c," and therefore acted without lawful authority. Doc. no. 6 at 36. The defendants' motion does not argue that Brown has failed to state a claim for a declaratory

[6] As the court explains below, Brown's claim against the defendants for violating their oaths of office is dismissed for other reasons.

judgment regarding the defendants' authority. Rather, they appear to argue that the court should decide the issue on the merits. At this stage of the case and on this record, the court has far too little information to decide whether Brown will ultimately be entitled declaratory relief on this issue.

The defendants rely on RSA 31:39(c) but do not address Brown's argument that only the Town's "legislative body," which he asserts is its town meeting voters, has the authority under RSA 31:39-c to adopt a "system for the administrative enforcement of violations of any municipal code, ordinance, bylaw, or regulation . . . prior to the service of a formal summons and complaint." Doc. no. 9-1 at 7 (emphasis omitted). The defendants do not provide legal argument (or evidence that the court could consider at this stage of the proceedings) that the Board is the Town's "legislative body" as contemplated by the statute or, if not, that the Town's "legislative body" did in fact adopt the Rules. The defendants have not established that they are entitled to judgment on Count V at this time.

## III. Alleged Breach Of Oaths Of Office

Brown alleges that Garland and Walla "violated their oath by failing to discharge and perform their duties agreeably to the United States Constitution and the laws of the state of New Hampshire and should be removed from office pursuant to [RSA] § 42:1." Doc. no. 6 at 37. The defendants argue that dismissal is warranted because there is no private right of action under RSA 42:1 and that Brown fails to state a claim for relief in any event. Brown concedes that a claim for damages is not available under RSA 42:1, but argues that his claim should survive because he seeks an order removing the defendants from office and has alleged sufficient facts to state a claim for such relief.

RSA 42:1 provides that "[e]very town officer shall make and subscribe the oath or declaration as prescribed by part 2, article 84 of the constitution of New Hampshire and any such person who violates said oath after taking the same shall be forthwith dismissed from the office involved." Further, "[t]he manner of dismissing a town officer who violates the oath as set forth in RSA 42:1 shall be by petition to the superior court for the county in which the town is located." RSA 42:1-a.

The defendants correctly point out that "[s]tate law does not provide a private cause of action for damages for violations of the oath of office," and there is "no other basis for asserting a separate claim in federal court based on such allegations." Bourne v. Arruda No. 10-CV-393-LM, 2011 WL 2357504, at *17 (D.N.H. June 10, 2011). Although Brown counters that he does not seek damages, but rather Garland and Walla's removal from office, he may not pursue that relief in a civil action in federal court. Instead, under RSA 42:1-a, the only way to remove an official from office for violating his or her oath is to "petition the superior court for the county in which the town is located."

Even if Brown were to abandon any claim for their removal and seek only declaratory relief, the court would be compelled to dismiss his claim. The court may grant declaratory relief only in cases with an "actual controversy" under Article III, examining "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 638, 645 (1st Cir. 2019) (emphasis omitted) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). A determination that Garland and Walla violated their oaths of office would not determine any legal interest between the parties to this case. As such, Count VI is dismissed.

## IV. Municipal Immunity

With regard to Brown's allegations that the defendants' actions have caused him (1) bodily harm by exacerbating his underlying medical conditions and (2) "personal injury in the form of increased waste disposal fees," the defendants argue that they enjoy municipal immunity from these claims under RSA 507-B, a New Hampshire law conferring immunity for certain tort claims. Doc. no. 7-1 at 15. The Supreme Court "has long held that 'a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted.'" Williams v. Reed, 604 U.S. 168, 174 (2025) (quoting Felder v. Casey, 487 U.S. 131, 139 (1988)); cf. Snelling v. City of Claremont, 155 N.H. 674, 690 (2007) ("[W]e conclude that when a suit against a governmental unit involves both claims under § 1983 and claims under state law, the claims under § 1983 are not subject to the cap in RSA 507-B:4."). Because the only claims seeking damages are Brown's claims under § 1983, the defendants cannot claim municipal immunity pursuant RSA 507-B:5.

## V. Punitive Damages

The defendants appear to concede that punitive damages are recoverable in a § 1983 action. See, e.g., Smith v. Wade, 461 U.S. 30, 56 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others."). Nevertheless, they argue that Brown's claim for such damages must be dismissed because it fails to allege sufficient facts.

"Punitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss." Johnson v. Rapid Sheet Metal, LLC, 560 F. Supp. 3d 623, 630 (D.N.H. 2020) (alteration omitted) (collecting cases). The Johnson court and others reasoned that "[a] Rule 12(b)(6) analysis tests the plausibility of claims, and remedies are not claims." Id. The court further noted that "as a practical matter, if a plaintiff need not even include a prayer for punitive damages in his complaint to receive an award of punitive damages, it makes little sense to require detailed factual allegations to support a demand for punitive damages." Id. (citations omitted).

The court agrees with the defendants that Brown appears to allege no facts that could support an award of punitive damages. Nevertheless, Brown's request for punitive damages is not a standalone claim and is instead a remedy, and so the court "exercise[s] its discretion and decline[s] to resolve whether punitive damages are recoverable against the [defendants] at this stage in the proceedings." Lane v. City of Rockland, No. 2:22-CV-00058-JAW, 2023 WL 1319566, at *6 (D. Me. Jan. 31, 2023) (collecting cases), report and recommendation adopted, No. 2:22-CV-00058-JAW, 2023 WL 2326247 (D. Me. Mar. 2, 2023).

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss Brown's amended complaint (doc. no. 7) is granted in part in denied in part. Brown's claim against Garland and

Walla alleging that they violated their oaths of office (Count VI) is dismissed. The motion to dismiss is otherwise denied.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 30, 2026

cc: Counsel of record.